UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

                              Case No.  21-30039

v.

                              Hon. Patricia T. Morris

Michael Joseph Foy,

        Defendant.

_____/

**Government's Brief in Support of Michal Foy's
<u>Pretrial Detention</u>**



**Figure 1: Michael Foy leading the charge--beating Capitol Police Officers with a hockey stick on January 6, 2021**

Defendant Michael Foy of Wixom, Michigan, went to Washington

D.C., rioted at the Capitol, and attacked police officers with a hockey

1

stick—striking them at least 10 times. Not satisfied with assault, he then appears to have rallied others to join him before crawling through a destroyed window and into the Capitol, weapon in hand.

Agents arrested Foy in his home on January 21, and found the hockey stick he used and the hat he wore during the riot in his residence. Foy is charged with four felonies in a criminal complaint out of Washington D.C., including forcible assault upon an officer of the United States. For the reasons stated below, Foy is both a danger to the community and poses a risk of nonappearance. The government and Pretrial Services request his detention.

## I. Factual Proffer

The U.S. Capitol is secured 24 hours a day by the Capitol Police. Restrictions around the Capitol include permanent and temporary security barriers and posts manned by Capitol Police. Only authorized people with appropriate identification are allowed inside the Capitol. On January 6, 2021, the exterior plaza was also closed to the public.

On January 6, 2021, a joint session of the Congress convened at the Capitol, with Vice President Pence presiding. The joint session began at approximately 1:00 p.m. As the proceedings continued, a large

crowd gathered outside the Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the building, and Capitol Police were present and attempting to keep the crowd away from the building and the proceedings underway inside.

At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, past officers of the Capitol Police, and advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by Capitol Police or other authorized security officials.

At such time, the certification proceedings still underway and the exterior doors and windows of the Capitol were locked or otherwise secured. The Capitol Police attempted to maintain order and keep the crowd from entering the building; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of the Capitol Police, as others in the crowd encouraged and assisted.

At approximately 2:20 p.m., members of the House of Representatives and Senate, including Vice President Pence, evacuated the chambers. All Congressional proceedings were suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the Capitol, including the danger posed by individuals who had entered the Capitol without any security screening or weapons check, proceedings could not resume until after every unauthorized occupant had left the Capitol and the building had been confirmed secured. The proceedings finally resumed at approximately 8:00 p.m. When the dust settled, five people were dead, including Capitol Police Officer Brian Sicknick, who died the day after he was overpowered and beaten by rioters.

*Defendant Michael Joseph Foy*

One of the January 6 rioters was the defendant, Michael Foy, a resident of Wixom, Michigan, and a former Marine. As shown below, Foy's actions on January 6 were among the most violent of all participants.

January 6 was not Foy's first protest: on November 6, 2020, Foy joined a mass demonstration at the TCF Center in Detroit where

workers counted absentee ballots. *See* figure 2. One difference between November and January, however, is that Foy carried a hockey stick with him during the D.C. riot. *See* figures 3, 4, and 5. Agents found the hockey stick in his residence when they arrested Foy on January 21.



**Figure 2: Foy protests in Detroit on November 6, 2020**



**Figures 3, 4, & 5: Foy and his hockey stick in D.C. on January 6**

Images and video taken at the Capitol show Foy attacking officers guarding the doors. The scene is chaotic, graphic, and brutal. Rioters hurled projectiles at the officers and physically assaulted them, often using weapons like poles, bottles, and in Foy's case, a hockey stick. Several officers were dragged into the crowd, stripped of their protective gear, and beaten. Other rioters used crowbars and other tools to knock the windows out of the Capitol so rioters could enter.

At one point, before the worst of the melee began, Foy threw what appears to be a sharpened pole at the officers. *See* Figure 6. A few seconds later, one of the rioters rushed the officers, knocking one of them to the ground. Foy jumped at the opportunity, immediately rushing towards the officers with his hockey stick raised. Figures 7 and 8 are from some of the videos taken of the riot and show Foy violently assaulting Capitol Police Officers—including the officer on the ground, unable to fully protect himself, as seen in Figure 8. Video shows that Foy swung (and appears to have struck officers with) his hockey stick no fewer than ten times.



**Figure 6: Foy throws a sharpened pole at Capitol Police Officers**





**Figures 7 & 8: Foy strikes police officers ten times with his hockey stick, including downed officers**

Body camera footage from one of the officers comes closest to capturing the chaos and aggression of the January 6 riot (the government will play clips of several different videos, including body camera footage, at Foy's detention hearing). Figure 9 is a still shot taken from the body camera footage. It shows officers on the ground, trying to protect themselves, as Foy swings his hockey stick at them.



**Figure 9: Foy winds up and swings over and at downed officers**

After ten swings, Foy fell back into the crowd—but he was far from finished. He stayed near the doors to the Capitol building. A few minutes later, Foy appears to have rallied his fellow rioters, again taking a leadership role in the chaos. After shouting to the crowd, Foy took his hockey stick and crawled through a broken window and into the Capitol. *See* figures 10 and 11. A photograph taken from Foy's cell

phone shows some of the rioters standing in the Capitol, glass on the carpet, tables overturned, destruction evident. *See* figure 12.





**Figures 10 & 11: Rallying the troops and entering the Capitol**



**Figure 12: Destruction of the Capitol**

## II. Argument

Under the Bail Reform Act, a defendant must be detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Act requires detention if the defendant is a danger to the community or poses a risk of nonappearance. *See id.*; *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). A finding of dangerousness "must be 'supported by clear and convincing evidence.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(f)(2)). But the government need only demonstrate the risk of nonappearance by a preponderance of the evidence. *Hazime*, 762 F.2d at 37.

**A.** **The 18 U.S.C. § 3142(g) factors show that Foy is a danger to the community and poses a risk of nonappearance**

The Court must consider the following factors when deciding whether to release or detain a defendant pending trial: the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger posed by the person's release." 18 U.S.C. § 3142(g)

10

1. Nature and circumstances of the charged offenses

The complaint charges Foy with four offenses: a ten-year felony for entering a restricted building—the Capitol—with the intent to disrupt the orderly conduct of government business while carrying a deadly or dangerous weapon, under 18 U.S.C. § 1752; a five-year felony for interfering with a law enforcement officer lawfully performing official duties during a civil disorder, under 18 U.S.C. § 231; a twenty-year felony for forcibly assaulting an officer of the United States while engaged in official duties, under 18 U.S.C. § 111; and a twenty-year felony for obstructing an official proceeding under 18 U.S.C. § 1512.

Foy's forcible assault count is a crime of violence, which is an express factor under 18 U.S.C. § 3142(g)(1) ("whether the offense is a crime of violence"). *See, e.g.*, *Darby v. United States*, 819 F. App'x 894, 895 (11th Cir. 2020) (a "conviction under § 111(b) qualifies as a 'crime of violence'").

And Foy's conduct here is some of the most violent that occurred at the riot on January 6. He, a former Marine trained in combat, brought a hockey stick to a riot at the Capitol, and when things started to get out of hand, he took a leading role in the violence. He repeatedly

11

used the hockey stick to beat police officers in the face, head, neck, and body area. And then he rallied others into entering the Capitol—through broken windows. The nature and circumstances of Foy's offenses support his detention.

### 2. The weight of the evidence against Foy

The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. Here, the weight of the evidence of defendant's dangerousness and risk of nonappearance is strong. Foy's actions were some of the most aggressive and violent at the January 6 riot. Far from a mere participant, Foy took a leadership role: he personally attacked officers and appears to have led others into the Capitol.

### 3. Foy's history and characteristics

Foy's conduct escalated over time. There is no indication that he brought a weapon to the November 6, 2020 protest at the TCF Center. But two months later, he repeatedly and aggressively assaulted Capitol Police Officers with a hockey stick.

Foy's substance abuse is also concerning: he reported drinking ten beers per day, as recently as January 20—the day before he was

arrested. He also has ready access to firearms: he kept two long guns in his residence prior to his arrest, and his mother (who offered to act as a third-party custodian) keeps approximately 10 firearms in her residence. While she offered to remove the weapons if Foy resided there, the fact remains that the defendant has access to guns and knows how to use them.

Foy's mental health history also necessitates his detention, as explained in the government's sealed supplement to this brief.

Given his history and characteristics, Foy's detention is appropriate in this case.

### 4. Danger to the community and himself

Michael Foy poses a demonstrated danger to the community and to himself if released on bond. He stormed the Capitol and assaulted police officers. His conduct was more than violent, it was reckless. The severity of his conduct coupled with his current mental health issues make Foy a danger to the community and to himself.

### III.  CONCLUSION

The Court should detain the defendant.

> Respectfully Submitted,
>
> Matthew Schneider
> United States Attorney
>
> */s Hank Moon*
> Hank Moon
> Assistant United States Attorney
> 211 West Fort Street, Suite 2001
> Detroit, Michigan 48226
> (313) 226-0220
> hank.moon@usdoj.gov

Date: January 24, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2021, I provided a copy of this brief to defense counsel in this case via electronic filing.

            */s Hank Moon*
            Hank Moon
            Assistant United States Attorney